UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| D.T.,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 20-cv-00793-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 21 |

Plaintiff D.T.[1] appeals a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 et seq. The parties have filed cross-motions for summary judgment.[2] Dkt. Nos. 19, 21.

The matter was submitted without oral argument. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants D.T.'s motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.[3]

---

[1] Because opinions by the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] D.T.'s brief did not comply with Civil Local Rule 7-4, which requires that any brief in excess of 10 pages must include a table of contents and table of authorities.

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 13.

## I. BACKGROUND

D.T. seeks SSI benefits beginning November 19, 2015, the date of her application. AR 15. An Administrative Law Judge ("ALJ") held a hearing and issued an unfavorable decision on August 3, 2018. AR 15–26. The ALJ found that D.T. had the following severe impairments: trochanter bursitis of the right hip, obesity, post-traumatic stress disorder ("PTSD"), and major depressive disorder ("MDD"). AR 17. The ALJ concluded that D.T. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *Id.* The ALJ then determined that D.T.'s residual functional capacity ("RFC") limited her to less than the full range of light work as follows: lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking about six hours of an eight-hour workday; sitting about six hours of an eight-hour workday; pushing or pulling consistent with the lifting just described; no postural or manipulative limitations; capable of understanding, remembering and sustaining concentration, pace and persistence for simple routines throughout a normal workday and workweek; able to accept routine supervision and interact with coworkers in a non-collaborative and superficial basis; occasional interaction with the public; can adapt to a routine and predictable work environment, recognizing typical hazards, traveling to routine locations, and setting goals independently within the framework noted above. AR 19. The ALJ concluded that D.T. was not disabled because she was capable of performing jobs that exist in the national economy, such as housekeeping cleaner, photocopy machine operator, and packing line worker. AR 25.

The Appeals Council denied D.T.'s request for review of the ALJ's decision. AR 1–3. D.T. filed this action on February 3, 2020. Dkt. No. 1.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means

"more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## III. DISCUSSION

D.T. contends that the ALJ erred by not assigning the proper weight to the opinions of her treating and examining physicians. Specifically, D.T. contends that the ALJ erred by (1) discounting the joint opinion of treating psychiatrist Harun Evcimen, M.D. and treating nurse practitioner Nicole Una, and (2) discounting the joint opinion of Dr. Evcimen and treating psychologist Bret Fimiani, Psy.D.[4] Dkt. No. 19 at 12–18.

For Social Security applications filed before March 27, 2017, under the "treating physician rule," "[t]he medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* 20 C.F.R. § 416.927(c)(2) (2016) (same). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." *Revels*, 874 F.3d at 654 (citing 20 C.F.R. § 404.1527(c)(2)-(6)); *see also* 20 C.F.R. § 416.927(c)(2)-(6) (same).

---

[4] D.T.'s motion describes opinion evidence from consultative examining physician Fahmida Zaman, Ph.D., but does not challenge the ALJ's assignment of little weight to Dr. Zaman's opinions. *Compare* Dkt. No. 19 at 11–12 (describing Dr. Zaman's opinions) *with id.* at 3, 12–18 (raising only arguments concerning the opinions of Drs. Evcimen and Fimiani and Ms. Una). Because D.T. does not challenge the ALJ's evaluation of Dr. Zaman's opinions, the Court does not address it.

3

When an ALJ gives a treating physician's opinion less than controlling weight, the ALJ must do two things. First, the ALJ must consider other factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. 20 C.F.R. § 416.927(c)(2)-(6); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Consideration must also be given to other factors, whether raised by the claimant or by others, or if known to the ALJ, including the amount of relevant evidence supporting the opinion and the quality of the explanation provided; the degree of understanding a physician has of the Commissioner's disability programs and their evidentiary requirements; and the degree of his or her familiarity with other information in the case record. 20 C.F.R. §§ 416.927(c)(6), 404.1527(c)(6) (2016); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The failure to consider these factors, by itself, constitutes reversible error. *Trevizo*, 871 F.3d at 676.

Second, the ALJ must provide reasons for rejecting or discounting the treating physician's opinion. The legal standard that applies to the ALJ's proffered reasons depends on whether another physician contradicts the treating physician's opinion. When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for rejecting or discounting the opinion, supported by substantial evidence. *Id.* at 675. When a treating physician's opinion is contradicted by another physician, an ALJ must provide "specific and legitimate reasons" for rejecting or discounting the treating physician's opinion, supported by substantial evidence. *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quotations and citation omitted).

The Court addresses each disputed opinion in turn.

### A. Treating Nurse Practitioner Nicole Una and Treating Psychiatrist Harun Evcimen, M.D.

Ms. Una provided a medical summary dated May 5, 2017, which Dr. Evcimen co-signed. AR 621–23. This medical summary listed D.T.'s diagnoses as "trochanteric bursitis of right hip,

4

thoracic back pain[,] major depressive disorder, [and] post traumatic stress disorder." AR 621. Her symptoms included "severe anxiety" and "poor concentration." AR 621. Ms. Una and Dr. Evcimen described D.T.'s functional limitations: with respect to her activities of daily living, her "knee and back pain make it difficult to stand or sit for too long"; with respect to her social functioning, she experienced "social anxiety and difficulty in large groups"; and with respect to her ability to concentrate and focus, she demonstrated "poor focus and difficulty with concentrating on daily tasks." AR 622. They opined that they expected D.T. to miss four to six day of work per month because of fatigue and/or illness. *Id.* Finally, they noted: "Although she has been fairly stable recently[,] she has been fragile. Her current symptoms are [a] significant barrier to start working again. She has been compliant with her treatment." *Id.*

The ALJ gave little weight to the opinion of Ms. Una and Dr. Evcimen for two reasons: (1) he faulted the opinion for providing only a "vague description of limitations," and (2) the limitations they described were "not consistent with treatment notes that described only moderate or mild MDD." AR 23. D.T. contends that the ALJ erred in so doing because he "only provided a conclusory statement with no interpretation of the facts or medical evidence" and "engaged in impermissible cherry-picking by relying only on treatment notes indicating improvement while ignoring other treatment notes indicating continued and severe impairment . . . ." Dkt. No. 19 at 16. The Commissioner argues that the ALJ properly considered the entire record, including evidence of severe symptoms, and assigned the proper weight to Ms. Una and Dr. Evcimen's opinion. Dkt. No. 21 at 4, 5.

With respect to the ALJ's first responsibility—consideration of other factors—the ALJ did not consider all the factors he was required to consider under 20 C.F.R. § 404.927(c)(2)-(6). 20 C.F.R. § 404.927(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.") (emphasis added); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion."). The ALJ did not discuss any of the factors as relevant to Ms. Una or Dr. Evcimen.

5

With respect to the ALJ's second responsibility—providing reasons for rejecting or discounting the treating physician's opinion—the ALJ did not expressly find that any other physician contradicted Ms. Una's and Dr. Evcimen's opinion. When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for rejecting or discounting the opinion, supported by substantial evidence. *Id.* at 675. Here, the ALJ asserted that Ms. Una's and Dr. Evcimen's opinion was "not consistent with treatment notes that described only mild or moderate MDD." AR 23.

D.T. contends that the ALJ erred by "cherry-picking" portions of the medical record that supported his findings and ignored conflicting medical evidence to the contrary. Dkt. No. 19 at 16. Upon review of the medical records and the ALJ's opinion, the Court does not agree. The ALJ noted D.T.'s reports of numerous psychiatric symptoms and her history of trauma, as well as medical providers' treatment notes noting poor grooming/hygiene, moderate depression and anxiety with congruent affect, crying, pressured speech, tangential thoughts at times, insomnia, and passive suicidal ideation. AR 20–21. D.T. points to multiple treatment notes in the record that she believes demonstrate "continued and severe impairment" that the ALJ disregarded. Dkt. No. 19 at 16–17) (citing AR 281, 270, 271, 423, 428, 414, 369, 727, 725, 630, 826, 821, 823). The ALJ considered and cited to several of these treatment notes, some of which he observed showed improvement in her mental state. AR 21, 22 (citing AR 270, 428, 369, 414, 727).

Although the notes D.T. cites do indeed describe her symptoms and ongoing issues (including, for example, her fear of men and of being attacked if she left her home), none of them describes her condition as anything more than mild or moderate, much less "severe" as D.T. claims. At her October 16, 2015 appointment, Dr. Fimiani noted that she continued to show improvement with slightly decreased depressive symptoms, decreased isolation, and reduced fear. AR 281. Dr. Fimiani also noted that she was prone to isolation, but had made some improvement by regularly attending medical appointments, and that she was showing the ability to overcome her fear of others in the context of engaging with her medical care. AR 271. At her November 2, 2015 appointment with her primary care physician, Elise Grenier, M.D., Dr. Grenier noted that D.T. was feeling a bit more comfortable about seeing a male provider. AR 269. At her December

6

30, 2015 appointment, Dr. Evcimen noted that she reported feeling down and a lack of motivation but denied any increased anxiety. AR 428–29. He also noted that upon examination, her affect was somewhat depressed, sad, and appropriate for her mood of feeling depressed and not energized. *Id.*

At her January 3, 2016 appointment with Dr. Fimiani, D.T. reported "feeling better mental wise" and that "I'm able to do things now, I can go out and it's ok…I still have some trouble with men walking behind me…but it's better. I still feel fearful and get depressed, but it's gotten better." AR 423. He described her mood as moderately depressed. *Id.* At her January 28, 2016 appointment with Dr. Fimiani, D.T. again reported "feeling better" overall, and stated that "I can go out now…be around crowds…and come to my appointments," although "I still don't like people walking behind me." AR 414. Dr. Fimiani observed that due to PTSD, she "historically was unable to leave her apartment, could not be around men, and suffered from unmanageable anxiety" but "[i]t is apparent that her mood, hypervigilance, avoidance, and level of [functioning] have improved significant[ly]. She continues to report significant depression and anxiety and her [functioning] remains somewhat impaired by persisting PTSD [symptoms]." *Id.* He described her mood as moderately depressed and anxious, but her low mood, helplessness, and hopelessness were much improved. *Id.* At her June 2, 2016 appointment, despite D.T. uncharacteristically missing therapy sessions and reporting an increase in depressive symptoms, Dr. Fimiani nevertheless described her mood as "mild depression and anxiety." AR 369. At her July 29, 2016 appointment with Dr. Fimiani, she was "somewhat guarded and withdrawn"; however, she reported that her depression and anxiety symptoms were better managed since she resumed taking her medication, and Dr. Fimiani described her mood as "moderate depression and anxiety." AR 727. At her August 2, 2016 appointment, Dr. Fimiani again described her as "somewhat guarded and withdrawn" and again described her mood as "moderate depression and anxiety." AR 725.

At her May 26, 2017 and June 6, 2017 appointments, Dr. Fimiani noted that D.T. continued to report difficulties in social settings secondary to her chronic PTSD, causing her to isolate somewhat. AR 630, 826. However, he also noted that she continued to cope well with her stressors and continued to report only mild depressive symptoms. *Id.* At her June 20, 2017

7

appointment with Dr. Evcimen, she reported feeling some occasional irritability and depression, possibly related to menopause. AR 823. Nevertheless, D.T. was unwilling to change her medication, stating, "I am doing okay." *Id.* When asked about her mood, she stated, "I am doing really good." AR 824. At her June 27, 2017 appointment, Dr. Fimiani noted that she continued to report mild to moderate depressive symptoms, including low mood, periodic low motivation, and agitation. AR 821. D.T. discussed an increase in depressive symptoms, including anger and frustration, due to recent relationship difficulties with her daughter. *Id.* Dr. Fimiani nevertheless stated that she continued to cope well with stressors, and that she "used [that day's] session well to process her feelings and identify the underlying triggers of her increased 'depression.'" *Id.* He diagnosed her with a moderate episode of MDD. *Id.*

None of D.T.'s citations to the record reveal anything more severe than a mild or moderate impairment, and the Court finds that the ALJ did not engage in impermissible cherry-picking of the record. The ALJ cited extensively to treatment notes indicating efficacy of medication and the stabilization, improvement, or even remission of D.T.'s mental health conditions, and he therefore provided a clear and convincing reason for rejecting the opinion of Ms. Una and Dr. Evcimen. AR 22–23. Nevertheless, the ALJ's failure to consider the factors listed in 20 C.F.R. § 404.927(c)(2)-(6) as required is reversible error. *Trevizo*, 871 F.3d at 676.

### B. Treating Psychiatrist Harun Evcimen, M.D. and Treating Psychologist Bret Fimiani, Psy.D.

Drs. Evcimen and Fimiani completed a mental functional assessment form for D.T. AR 624–25. They state that they have been treating her since September 2015 and diagnosed her with chronic PTSD, mild to moderate depression, substance abuse disorder in remission, and DSM Axis V: 50[5]. AR 624. They noted that she exhibited the following PTSD and complex PTSD

---

[5] The Court understands this to mean that Drs. Evcimen and Fimiani have assigned D.T. a Global Assessment of Functioning ("GAF") score of 50. A GAF score "is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." *Willig v. Berryhill*, No. 16-cv-03041-MEJ, 2017 WL 2021369, at *4 n.2 (N.D. Cal. May 12, 2017) (internal quotation marks and citations omitted). "A GAF score of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals[,] frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." *Kounitski v. Berryhill*, No. 16-CV-03018-LHK, 2017 WL

8

symptoms: nightmares, avoidance and hypervigilance, emotional dysregulation, dissociation, isolation, and distrust. *Id.* She exhibited depression symptoms of low mood, anxiety, and isolation. *Id.* The doctors opined that D.T. was markedly impaired in her activities of daily living; social functioning; concentration, persistence, and pace; and her ability to adapt to work type settings. AR 624–25. The bases cited for these limitations were the above described symptoms, D.T.'s report of difficulty with her activities of daily living, and the fact that she had not been employed in 30 years. *Id.* The doctors noted that she reported experiencing this level of impairment for "20+ years." AR 625.

The doctors stated that D.T. was taking Wellbutrin, Hydroxyzine, Lexapro, and Trazedone for her conditions, but did not mention any side effects. *Id.* Their prognosis was:

> [Client] has been engaged with her psychological, psychiatric, and primary care at [Tenderloin Health Services]. She has exhibited improvement (e.g. mood and PTSD [symptoms] are well managed w/ medications and weekly 1-1 therapy[)]. Substance abuse in remission. [Client] should continue to benefit with continued wrap around care.

*Id.* The ALJ assigned "little weight" to Drs. Evcimen and Fimiani's opinion for two reasons: (1) the opinion was inconsistent with treatment notes describing only mild or moderate MDD, and (2) the opinion was inconsistent with D.T.'s testimony that she panhandled daily at locations such as San Francisco Giants games and was able to obtain enough money for food each day. AR 23–24.

With respect to the ALJ's first responsibility—consideration of other factors—the ALJ again did not consider all the factors he was required to consider under 20 C.F.R. § 404.927(c)(2)-(6). 20 C.F.R. § 404.927(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.") (emphasis added); *see also Ghanim*, 763 F.3d at 1161 ("The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion."). Although the ALJ noted that Dr. Fimiani possessed a doctorate in psychology, he did not otherwise discuss the

---

5900192, at *6 (N.D. Cal. Nov. 30, 2017) (citing Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV) 31–34 (4th ed. 2000)).

length or extent of the treatment relationship, the frequency of examination, or either doctor's specialization. AR 23–24. As a result, it is unclear to what extent, if any, the ALJ considered those other factors and how those factors informed the ALJ's decision to give Drs. Evcimen and Fimiani's opinion little weight.

With respect to the ALJ's second responsibility—providing reasons for rejecting or discounting the treating physician's opinion—the ALJ did not expressly find that any other physician contradicted Drs. Evcimen and Fimiani's opinion. When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for rejecting or discounting the opinion, supported by substantial evidence. *Trevizo*, 871 F.3d at 675. As she did with the opinion of Ms. Una and Dr. Evcimen, D.T. argues that "the ALJ only provided a conclusory statement with no interpretation of the facts or medical evidence." Dkt. No. 19 at 14. As described above, this argument is not persuasive because the ALJ provided a detailed discussion of the medical evidence of record, which did not indicate that D.T.'s mental health conditions exceeded mild or moderate severity. *See supra* Section III.A. An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)) (internal quotation marks omitted).

D.T. further argues that the ALJ erred in relying on his mischaracterization of her testimony concerning her panhandling activities. Dkt. No. 19 at 165. Specifically, she contends that the ALJ incorrectly stated in his decision that she testified to panhandling daily in multiple locations; rather, she testified only as to panhandling in the past and did not describe any particular locations. *Id.* Thus, D.T. says, the ALJ's rejection of Drs. Evcimen and Fimiani's opinion based on her panhandling lacked the necessary evidentiary support. The Commissioner contends that the ALJ's opinion was consistent with information that D.T. gave to her treatment provider— namely, that she engaged in panhandling on multiple occasions. Dkt. No. 21 at 4.

The record evidence concerning D.T.'s panhandling activities is very limited. She testified as follows before the ALJ:

> Q. How have you been able to pay for your food if you haven't worked in the last 25 to 30 years?
>
> A. Honestly, I get food stamps right now. So, it buys food –
>
> Q. Were you getting them for the whole 25 to 30 years?
>
> A. No. When I was – I would panhandle to make money.
>
> Q. Okay. So, how long a day would you be panhandling?
>
> A. Like 30 minutes. 45 minutes maybe and that's it.
>
> Q. You, you could get enough within 45 minutes to get food for the day?
>
> A. Yes.

AR 55. The medical records contain only a few mentions of panhandling. On July 25, 2017, Dr. Evcimen referred D.T. to Ms. Una for smoking cessation, AR 814, and Ms. Una noted: "7/25 Reasons to stop: disgusting, health - breathing with steps. [Boyfriend] continues to smoke; [patient] admits to low motivation to do much, even on island - panhandling."[6] AR 817. On September 21, 2017, D.T. saw Ms. Una for a follow-up appointment concerning her smoking cessation efforts, and she complained of feeling "burnt out from panhandling." AR 798–99. On April 4, 2018, D.T. saw Ms. Una for another follow-up appointment, at which D.T. stated that she planned to panhandle at the Giants game that day. AR 755.

Although this minimal evidence demonstrates that D.T. engaged in panhandling on a few occasions, and that she once planned to do so at a San Francisco Giants game, there is nothing in the record that suggests she did so on a daily or even regular basis. There is no evidence of how long she relied on panhandling to obtain money for food before she was able to obtain food stamps. Her testimony stating that she only needed to panhandle for 30 to 45 minutes to obtain enough money for food for a day is consistent with her statement to Dr. Zaman that she only ate one meal each day. *See* AR 616.

The ALJ's opinion fails to explain how this limited evidence of panhandling is inconsistent with D.T.'s asserted impairments or how her panhandling bears on an evaluation of her symptoms

---

[6] This note from July 25 is copied verbatim in subsequent treatment notes dated August 2, 2017, August 22, 2017, and September 21, 2017. AR 812, 808, 798.

11

or her ability to engage in work. *See, e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("[O]nly if [the claimant's] level of activity were inconsistent with [her] claimed limitations would these activities have any bearing on [her] credibility.") (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)) (internal quotation marks omitted); *Watkins v. Comm'r, Soc. Sec. Admin.*, No. 3:14-cv-01753-HZ, 2016 WL 184425, at *5 (D. Or. Jan. 15, 2016) (finding that ALJ erred by, among other things, failing to explain how claimant's periodic impulsive wandering, hitchhiking, sleeping under bridges, and panhandling were indicative of his ability to "function in public" at a higher level than claimant's treating psychologist assessed). Thus, to the extent the ALJ relied on D.T.'s purported daily panhandling at multiple San Francisco Giants games as a reason to reject Drs. Evcimen and Fimiani's opinion, that reliance is not based on substantial evidence.

Because the ALJ again failed to consider the factors listed in 20 C.F.R. § 404.927(c)(2)-(6) as required, his rejection of Drs. Evciman and Fimiani's opinion is reversible error. *Trevizo*, 871 F.3d at 676.

## IV. DISPOSITION

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). On remand, the ALJ must reassess Ms. Una's and Drs. Evcimen and Fimiani's opinions in view of the record as a whole and provide legally adequate reasons for any portion of that opinion or statement that the ALJ discounts or rejects.

Based on the foregoing, D.T.'s motion for summary judgment is granted on the grounds explained above, the Commissioner's cross-motion for summary judgment is denied, and this matter is remanded for further proceedings consistent with this order. The Clerk of the Court shall enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

Dated: May 11, 2021

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

12